UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Nicholas C.,<br>    *Plaintiff*,<br><br>v.<br><br>Kilolo KIJAKAZI,<br>Acting Commissioner of the Social<br>Security Administration,[1]<br>    *Defendant*. | 3:21-CV-00420 (KAD)<br><br><br><br><br><br><br>APRIL 22, 2022 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge:

Plaintiff, Nicholas C., brings this administrative appeal pursuant to 42 U.S.C. § 405(g). Plaintiff appeals the decision of Defendant, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for disability insurance benefits pursuant to Title II of the Social Security Act ("Act") and for hospital insurance pursuant to Part A of Title XVIII of the Act. Plaintiff moves to reverse the Commissioner's decision on the basis that the Commissioner's findings are not supported by substantial evidence in the record and/or that the Commissioner did not render a decision in accordance with applicable law. Alternatively, Plaintiff seeks remand of this matter for further proceedings before the Commissioner on the basis that he did not receive a full and fair hearing.[2] In response, the Commissioner asserts that the decision is supported by substantial evidence in the record and moves for an order affirming the Commissioner's decision. For the reasons set forth below,

---

[1] Plaintiff commenced this action on Mach 26, 2021 against Andrew M. Saul, former Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi became Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case to reflect same.
[2] Plaintiff does not identify any substantive or procedural deficiencies in the conduct of the hearing. Nor does he further address this claim in his briefing.

1

Commissioner's motion to affirm is GRANTED. (ECF No. 18). Plaintiff's motion to reverse or remand is DENIED. (ECF No. 15).

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations;[3]

---
[3] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

(4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)-(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of § 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the

Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On November 3, 2016, Plaintiff filed an application for disability insurance benefits[4] pursuant to Title II of the Act[5] and hospital insurance pursuant to Part A of Title XVIII of the Act,[6] alleging an onset date of December 31, 2015.[7] (ECF No. 11 at 133, 295). The claim was initially denied on June 8, 2017, and upon reconsideration on August 21, 2017. (*Id*. at 133). Thereafter, a hearing was held before an Administrative Law Judge ("ALJ") on May 29, 2018. (*Id.*). On August 14, 2018, the ALJ issued a written decision denying Plaintiff's application for benefits under Title II of the Act. (*Id.*, at 133–34, 143). Specifically, the ALJ concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset date of December 31, 2015, through the date last insured of March 31, 2016. (*Id.*, at 143). The Appeals Council granted Plaintiff's request for review of the ALJ's decision and, on August 13, 2019, vacated the decision and remanded the case for further proceedings before the ALJ. (*Id.*, at 150). Specifically, the Appeals Council remanded for resolution of the following issues: (1) development of the administrative record to include additional evidence regarding Plaintiff's impairments, as may be available to the ALJ; (2) adjudication of Plaintiff's claim of disability for hospital insurance pursuant to Part A of

---

[4] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900, *et seq.*

[5] 42 U.S.C. § 401 *et seq*. Plaintiff remained insured for disability insurance benefits through March 31, 2016. (ECF No. 11 at 134).

[6] 42 U.S.C. § 1395c *et seq*. Plaintiff remained insured for hospital insurance through December 31, 2017. (ECF No. 11 at 22).

[7] Plaintiff initially alleged an onset date of April 12, 2012. However, at the May 29, 2018 hearing before the ALJ, Plaintiff amended the onset date to December 31, 2015. (ECF No. 11 at 133).

Title XVIII of the Act and for disability insurance benefits pursuant Title II of the Act, in light of the expanded administrative record; (3) further evaluation of Plaintiff's mental impairments; and (4) further evaluation of Plaintiff's maximum RFC. (*Id.*, at 150–52).

A hearing was held on remand before the ALJ on February 11, 2020. (*Id.* at 21). Plaintiff and a vocational expert, Albert J. Sabella, testified at the hearing. (*Id.*). Attorney, Richard B. Grabow, represented Plaintiff. (*Id.*). The ALJ considered Plaintiff's claims for disability insurance benefits under Title II of the Act as well as for hospital insurance under Part A of Title XVIII of the Act. (*Id.*). As directed by the Appeal Council the ALJ also obtained additional evidence with respect to Plaintiff's impairments and further evaluated Plaintiff's mental impairments and maximum RFC. (*Id.*, at 21–22). On March 30, 2020, the ALJ issued a written decision denying Plaintiff's application for benefits under Title II of the Act as well as Part A of Title XVIII of the Act. (*Id.*, at 23, 35).

At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity between the alleged onset date of December 31, 2015, and the date last insured for disability insurance benefits of March 31, 2016. (*Id.*, at 24). At Step Two, the ALJ determined that Plaintiff had a severe combination of impairments, which included degenerative disc disease of the lumbar spine and major depressive disorder. (*Id.*, at 24–25). At Step Three, however, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations.[8] (*Id.*, at 25). At Step Four, the ALJ found that Plaintiff had the RFC to perform light work[9] subject to several

---

[8] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, [courts should] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

5

limitations, to include that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes or scaffolds, and occasionally stoop. (*Id.*, at 27). The ALJ further found that Plaintiff could perform simple, routine tasks, use judgment limited to simple work-related decisions, deal with routine changes in the work setting and have only occasional contact with the public. (*Id.*).[10] At Step Five, the ALJ found that Plaintiff did not have the RFC to perform his past relevant work as a secondary school teacher, an upholstery cleaner or a carpet cleaner/floor waxer. (*Id.*, at 33). However, based on testimony from Mr. Sabella, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could have performed. (*Id.*). The ALJ thus concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act through the dates last insured. (*Id.*, at 35). Accordingly, the ALJ determined that Plaintiff was not entitled to disability insurance benefits under Title II of the Act from the alleged onset date of December 31, 2015, through the date last insured of March 31, 2016, or hospital insurance under Part A of Title XVIII of the Act through the date last insured of December 31, 2017. (*Id.*). This timely appeal followed.

**Discussion**

Plaintiff advances three arguments in his appeal. First, that that the ALJ erred at Step Two by failing to identify Plaintiff's sacroiliitis as a severe medically determinable impairment. Second, that the ALJ's alleged error at Step Two renders the ALJ's assignment of RFC at Step Four unsupported by substantial evidence. Third, that the ALJ violated the "treating physician rule," 20 C.F.R. § 404.1526, when assigning weight to the opinions of Mark D. Watson, M.D., ("Dr. Watson") and Andrew H. Selinger, M.D., ("Dr. Selinger").

---

[10] The ALJ found that Plaintiff could frequently balance, frequently kneel, frequently crouch, and frequently crawl. (*Id.*, at 27).

In response, although the Commissioner does not concede that the ALJ erred at step two, the Commissioner argues that the alleged error was harmless because the ALJ considered Plaintiff's sacroiliitis and treatment for the condition at Step Four in determining Plaintiff's RFC. The Commissioner further contends that the ALJ's determination of Plaintiff's RFC at Step Four was supported by substantial evidence and that the ALJ did not violate the treating physician rule when assigning weight to the opinions of Dr. Watson and Dr. Selinger.

There is little question that the Plaintiff suffers from chronic pain and has since his motorcycle accident in 2012. And it appears from the evidence of record that Plaintiff's condition has worsened over time and he may be, at this point, unable to work. But the issue before the Court is not whether Plaintiff is presently disabled, but whether he was disabled as of December 31, 2015, or any time prior to the dates last insured—March 31, 2016 for disability insurance benefits and December 31, 2017 for hospital insurance. Upon review of the record evidence, the Court concludes that the ALJ's decision that Plaintiff was not disabled during this time period is supported by substantial evidence. And although the ALJ erred at Step Two of the sequential analysis by failing to identify sacroiliitis as a severe impairment, such error was harmless as it is clear that the sacroiliitis and Plaintiff's treatment for same were properly considered at Step Four and in the formulation of Plaintiff's RFC. Finally, the ALJ's weighing of the treating physician's opinions did not violate the treating physician rule.

1. <u>ALJ Erred at Step Two by Failing to Identify Plaintiff's Sacroiliitis as a Severe Impairment</u>

As indicated, Plaintiff contends that the ALJ erred at Step Two by failing to identify Plaintiff's sacroiliitis as a severe medically determinable impairment. The Commissioner neither concedes nor argues this issue. The Court agrees with Plaintiff.

At Step Two, the Commissioner determines whether the claimant has a severe medically determinable physical or mental impairment or a combination of impairments that meets the duration requirement in § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to perform basic work activities. Social Security Ruling ("SSR") 96–3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); s*ee also Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (explaining that "severe" impairments "must cause more than minimal limitations in [a claimant's] ability to perform work-related functions") (internal quotation marks omitted; alteration in original). Impairments that are "not severe" must be only a slight abnormality that has a minimal effect on the claimant's ability to perform basic work activities. SSR 96–3p. The claimant bears the burden of providing evidence establishing the severity of the condition at Step Two. *Bailey v. Berryhill*, No. 3:18-cv-00013 (WIG), 2019 WL 427320, at *3 (D. Conn. Feb. 4, 2019).

At Step Two, the ALJ determined that Plaintiff had a severe combination of impairments, which included degenerative disc disease of the lumbar spine and major depressive disorder. (ECF No. 11 at 24–25). The record, however, is replete with references to Plaintiff's sacroiliitis as the cause of his chronic pain and attendant limitations on his work activities.[11]

Plaintiff's sacroiliitis appeared in medical records as early as 2012. On September 14, 2012, upon referral by Dr. Selinger to Pain & Spine Specialist of Connecticut, Plaintiff attended a

---

[11] Plaintiff avers that degenerative disc disease and sacroiliitis are not the same impairment. (ECF No. 15-2 at 10). The Commissioner does not contest this assertion. Plaintiff notes that degenerative disc disease is the deterioration of the discs in the spinal column. (*Id.*) (citing Teresa Dumain, *What is Degenerative Disk Disease?*, WebMD (Dec. 11, 2021), https://www.webmd.com/back-pain/degenerative-disk-disease-overview). Plaintiff further notes that sacroiliitis is the inflammation of the sacroiliac joints, which are situated where the scrum meets the ilium, below the spinal vertebrae. (*Id.*) (citing *Sacroiliitis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747 (last visited April 15, 2022)). The Court agrees that degenerative disc disease and sacroiliitis are unequivocally not the same impairment.

physiatric consultation to evaluate and treat late effects of a motorcycle accident in April of 2012. (ECF No. 11-1 at 175–77). The impressions from Plaintiff's September 14, 2012 appointment indicated a clinical presentation suggestive of right sacroiliac derangement. (*Id.*). Thereafter, on August 27, 2014, upon consultation with Dr. Watson for back pain related to his motorcycle accident, Dr. Watson specifically observed Plaintiff's chronic sacroiliitis and chronic sacroiliac strain. (*Id.*, at 248–49). Dr. Watson indicated that Plaintiff "continues to suffer significantly with regards to pain, loss of employment and his work and occupation has significantly suffered" as a result of his condition. (*Id.*). Finally, Dr. Watson noted that Plaintiff's "prognosis for recovery is poor." (*Id.*). On November 6, 2015, Dr. Watson again observed that Plaintiff suffers from sacroiliitis and noted that "he has a permanent impairment from this condition." (ECF No. 11-1 at 1027). Dr. Watson also observed that Plaintiff was "dealing with chronic pain, and this will continue." (*Id.*).[12]

Further, during the relevant time period, Plaintiff continued to treat for this condition. Plaintiff's sacroiliitis and arthropathy of his sacroiliac joint were assessed on February 19, 2016 and October 5, 2016. (*Id.*, at 1037–39; 1057–59). On February 19, 2016, Dr. Watson specifically observed "TTP over the sacrum, coccyx and SI joint (left sided), unchanged from last visit [and] [p]ressure in lower sacrum." (*Id.*, at 1038). Moreover, it appears that Plaintiff's sacroiliitis was a significant contributing cause of his chronic pain and limitations to work activities. During Plaintiff's February 19, 2016 treatment, Dr. Watson observed "a lot of SI joint dysfunction and pain" and noted that Plaintiff "[n]eed[s] to change profession as [his] job is aggravating his

---

[12] Plaintiff's sacroiliitis was additionally noted by Dr. Watson in Plaintiff's progress notes on March 28, 2013, July 15, 2013, August 19, 2013, December 6, 2013, February 6, 2014, July 11, 2014, August 27, 2014, January 8, 2015, and November 6, 2015. (*Id.*, at 210–12; 982–83, 222–24; 230–35; 242–44; 248–49; 253–54; 264–66). Plaintiff also treated with Hartford Hospital Pain Treatment Center for his lower back pain on December 18, 2014, which assessed Plaintiff as suffering from sacroiliitis. (*Id.*, at 444–45).

symptoms." (*Id*., at 1039). Dr. Watson further noted that Plaintiff "has a permanent impairment from this condition. He is dealing with chronic pain and this will continue." (*Id.*).

Notwithstanding the abundance of medical evidence establishing Plaintiff's sacroiliitis as a severe physical impairment, the ALJ did not recognize the same at Step Two. This was error.

2. ALJ's Step Two Error was Harmless

Plaintiff next argues that the ALJ's error at Step Two renders the ALJ's assignment of RFC at Step Four unsupported by substantial evidence. The Commissioner responds that the ALJ's error at Step Two is harmless because the ALJ considered Plaintiff's sacroiliitis in subsequent steps when evaluating Plaintiff's RFC. The Court agrees with the Commissioner.

"An ALJ's failure to classify an impairment as severe at Step Two is harmless if the ALJ finds other severe impairments and considers the omitted impairment in the subsequent analysis." *Sandra C. v. Saul*, No. 3:19-CV-942(RAR), 2021 WL 1170285, at *4 (D. Conn. Mar. 29, 2021). *See*, *e.g.*, *O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. 2014) (finding ALJ's omission of right knee impairment at Step Two to be harmless error because ALJ found other severe impairments and "specifically considered" right knee dysfunction in subsequent steps); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (classifying ALJ's omission of anxiety and panic disorders at Step Two as harmless error because ALJ identified other severe impairments and "specifically considered" anxiety and panic attacks in subsequent steps); *Rivera v. Colvin*, 592 F. App'x 32, 33–34 (2d Cir. 2015) (finding ALJ's omission of anxiety and PTSD at Step Two to be harmless error because ALJ considered both severe and non-severe impairments in subsequent steps). When determining whether a claimant's impairments render him or her disabled under the Act, an ALJ shall consider "the combined effect of all of the individual's impairments." 42 U.S.C § 423(d)(2)(B).

Here, although the ALJ did not identify sacroiliitis as a severe impairment at Step Two, it is clear that the ALJ considered Plaintiff's sacroiliitis at Step Four in assessing Plaintiff's RFC. (*See* ECF No. 11 at 29–30) ("I base the [RFC] for performing work activity at the light exertional level with the above-stated postural limitations upon the objective radiographic evidence of lumbar degenerative disc disease without myelopathy and sacroiliitis."). Indeed, the ALJ relied extensively on Dr. Watson's treatment records which, as discussed above, repeatedly referenced Plaintiff's sacroiliitis, described his pain level, and included the Plaintiff's self-report of activities he engaged in and the treatment modalities utilized. (*Id.*, at 28–29). All of the treatment notes informed the ALJ's determination. (*Id.*). And the ALJ both acknowledged Plaintiff's chronic pain and made accommodations for same by including limitations in Plaintiff's RFC that account for his sacroiliitis, such as light work with limited climbing of stairs. (*Id.*, at 27–28). "Because this condition was considered during the subsequent steps, any error was harmless." *O'Connell*, 558 F. App'x at 65; *Reices-Colon*, 523 F. App'x at 798.[13]

3. <u>ALJ's Weighing of Opinion Evidence Did Not Violate Treating Physician Rule</u>

---

[13] Plaintiff also challenges the ALJ assessment that Plaintiff was not "credible" given the ALJ's failure to recognize sacroiliitis as a severe impairment and its attendant impact on him. But the ALJ's determination that Plaintiff's testimony was not entirely consistent with the record relies largely on Dr. Watson's treatment notes which, again, make clear that Plaintiff was treating for sacroiliitis and the pain resulting therefrom. (*Id.*, at 28). Further, an ALJ's consideration of a claimant's part-time work and daily activities is entirely proper and may support an ALJ's decision to discount a claimant's testimony with respect to his or her symptoms and RFC. *Durante v. Colvin*, No. 3:13CV1298 HBF, 2014 WL 4852881, at *20 (D. Conn. Aug. 7, 2014), *report and recommendation adopted*, No. 3:13-CV-1298 JCH, 2014 WL 4843684 (D. Conn. Sept. 29, 2014); 20 C.F.R. §§ 404.1571, 416.971; SSR 16-3p; 20 C.F.R. § 404.1529(c)(3). Here, the ALJ found that Plaintiff worked during 2015 through October of 2016 as a self-employed carpet cleaner, which involved moving furniture and carrying equipment from a truck to a house. (ECF No. 11 at 28, 49–50, 338, 362–63). The ALJ also found that Plaintiff went to the gym a few times per week, went on a two-week vacation, and attended the Big E Fair. (ECF No. 11 at 28–29); (ECF No. 11-1 at 1045; 1048; 267; 704). "Ultimately, [i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008) (internal quotation mark omitted; alternations in original). *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("[Plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").

Finally, Plaintiff contends that the ALJ's assignment of weight to the opinions of Dr. Watson and Dr. Selinger violated the "treating physician rule," 20 C.F.R. § 404.1527.[14] In response, the Commissioner contends that substantial evidence supports the ALJ's determination to assign only partial or little weight to these medical opinions. The Court agrees with the Commissioner.

"Pursuant to that [20 C.F.R. § 404.1527], the ultimate finding on the claimant's [RFC] is reserved to the Commissioner. [*Id.*, at] § 404.1527(d)(2). In making that finding, the agency 'use[s] medical sources, including [the claimant's] treating source, to provide evidence, including opinions, on the nature and severity of [the claimant's] impairment(s).' *Id.* The agency must follow what is commonly called the 'treating physician rule' when considering the opinion of a claimant's treating source: If the agency finds 'that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the agency] will give it controlling weight.' *Id.*, [at § 404.1527(c)(2)]." *Schillo v. Kijakazi*, No. 20-3943-CV, 2022 WL 1020381, at *2, __ F.4th __ (2d Cir. Apr. 6, 2022).

"Under Second Circuit precedent and the applicable regulations, an ALJ must follow a two-step procedure to determine the appropriate weight to assign to the opinion of a treating physician. . . . At step one, the ALJ must decide whether the opinion is well-supported by medically

---

[14] "For claims filed before March 27, 2017, the ALJ's decision must account for the 'treating physician rule': If the record contains a treating physician's opinion about the nature and severity of the claimant's impairments, the ALJ must determine whether, in light of the administrative record, that opinion is entitled to controlling weight, or something less. Congress has authorized federal courts to engage in limited review of final agency decisions in Social Security disability cases." *Schillo v. Kijakazi*, No. 20-3943-CV, 2022 WL 1020381, at *1, __ F.4th __ (2d Cir. Apr. 6, 2022). It is undisputed that Plaintiff filed his claim on November 3, 2016, and that 20 C.F.R. § 404.1527 therefore applies to this case.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. . . . If the opinion meets these criteria, then it is entitled to controlling weight. . . . Otherwise, the ALJ must proceed to step two and determine how much weight, if any, to give the opinion. . . . At step two, the ALJ must explicitly consider the following factors derived from [the Second Circuit's] decision in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008): (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. . . . At both steps one and two, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion. . . . Moreover, the failure to explicitly apply the *Burgess* factors when assigning weight at step two is a procedural error, and unless the ALJ has otherwise provided good reasons for its weight assignment, we [will be] unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons. . . . If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm." *Ferraro v. Saul*, 806 F. App'x 13, 14–15 (2d Cir. 2020) (citations omitted; internal quotation marks omitted).

Dr. Watson completed a medical impairment questionnaire on December 6, 2016, in which he opined that Plaintiff had difficulty with dressing due to pain, required breaks every fifteen minutes, and that he was unable stand for more than fifteen minutes. (ECF No. 11-1 at 968–972). The ALJ gave Dr. Watson's December 2016 opinion partial weight because the ALJ found that it was inconsistent with evidence of record. (ECF No. 11 at 30). Specifically, the ALJ noted that Dr. Watson's December 2016 opinion was inconsistent with Plaintiff's work and recreational activities, including working as a carpet cleaner, engaging in yard work and exercising several

13

times per week. (*Id*.). The ALJ further found that Dr. Watson's December 2016 opinion was inconsistent with his treatment notes prepared just prior to when Dr. Watson prepared the medical impairment questionnaire, which indicated that Plaintiff reported his symptoms were not "too bad" and that his pain was improving with medication and decreased work. (ECF No. 11-1 at 1072). Dr. Watson's treatment notes also indicated that Plaintiff maintained full range of motion in all extremities, Plaintiff had normal motor strength, Plaintiff's pain control was improving, and Dr. Watson advised Plaintiff to participate in strengthening twenty minutes per day. (*Id*., at 1074). There is no indication that Plaintiff's limitations required breaks every fifteen minutes or hindered his ability to stand to the extent suggested by Dr. Watson in his December 2016 opinion. The ALJ's findings that Dr. Watson's December 2016 opinion was inconsistent with and not supported by the record are "good reasons" to assign partial weight, in accordance with 20 C.F.R. § 404.1527. *See Tricarico v. Colvin*, 681 F. App'x 98, 100 (2d Cir. 2017) (finding substantial evidence in support of ALJ's decision to afford limited weight to treating physician's opinion where it contained internal inconsistencies and was inconsistent with other evidence of record, including opinions of other medical experts).

Dr. Watson issued a medical source statement on February 4, 2020, in which he opined that Plaintiff was limited to sedentary work and required a cane to ambulate long distances and that these limitations had been present since March 2016. (ECF No. 11-2 at 337–42). The ALJ gave this opinion little weight because the ALJ found that it was inconsistent with evidence of record from the relevant time period. (ECF No. 11 at 31). Specifically, the ALJ noted that Dr. Watson had not prescribed a cane until February 3, 2020, well after the dates last insured. (*Id.*, at 31, 425). The ALJ further found that Dr. Watson's February 2020 opinion was inconsistent with medical records from before the dates last insured, which indicate that Plaintiff did not start using

a cane to ambulate long distances until August of 2019, well after the dates last insured. (*Id.*, at 31); (ECF No. 11-2 at 71, 73, 77). Indeed, Plaintiff's treatment notes from June of 2016 reveal that "[u]ntil recently he continued to exercise" and "intermittently he utilizes a cane." (ECF No. 11-1 at 528). Plaintiff described "dull, throbbing" pain at that time and indicated that he was "unable to perform '3 jobs' while on work as an independent carpet cleaner." (*Id.*). On November 6, 2015, just prior to the alleged onset date while Plaintiff continued to report pain with "prolonged walking" and trouble sleeping due to pain, he also reported to Dr. Watson that he "[c]ontinues to exercise twice a week . . . [and] [f]eels as though he is more physically fit." (*Id.*, at 264). In February of 2016, Plaintiff reported to Dr. Watson that he felt "60% better overall" following treatment in December of 2015, he "[c]ontinues to have the dull aching pain but it is not as severe or as frequent," and he had taken a two-week cruise during which he "needed to use his cane almost daily." (*Id.*, at 1037). While these records demonstrate that his condition is severe for purposes of the five-step analysis, they do not support and indeed contradict, Dr. Watson's opinion regarding the Plaintiff's limitations as of March of 2016. The ALJ's findings that Dr. Watson's February 2020 opinion was inconsistent with and not supported by the record are "good reasons" to assign little weight to the opinion, in accordance with 20 C.F.R. § 404.1527. *See Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019), as amended (Apr. 30, 2019) ("To be entitled to disability insurance benefits, claimants must demonstrate that they became disabled while they met the Act's insured status requirements.") (citing 42 U.S.C. § 423(a)(1)(A), (c)(1)).

Dr. Selinger completed a medical source statement on January 27, 2020, in which he opined that Plaintiff was limited to sedentary work and required a cane to ambulate long distances and that these limitations had been present since March 2016. (ECF No. 11-2 at 264–69). The ALJ gave Dr. Selinger's January 2020 opinion little weight because, as with Dr. Watson's February

2020 opinion, it was inconsistent with evidence of record during the relevant time period. (ECF No. 11 at 31). For example, Dr. Selinger's treatment notes from February of 2016 reflect that Plaintiff's "health since last visit is described as good" and that Plaintiff "exercises regularly." (ECF No. 11-1 at 760). In September of 2016, Dr. Selinger noted that the Plaintiff was "feeling the physical demands" of his job and he had "cut back" on work. (*Id*., at 757). Indeed, a review of Dr. Selinger's treatment notes reveal very little regarding the nature and extent of Plaintiff's back problems or sacroiliitis. The inconsistency between Dr. Selinger's opinion and his own treatment notes from the relevant time period provided "good reasons" to assign little weight to the opinion, in accordance with 20 C.F.R. § 404.1527. *See Tricarico*, 681 F. App'x at 100.

After a searching review of the record, it is evident that the ALJ applied the substance of the treating physician rule. *Schillo*, 2022 WL 1020381, at *10. Because ALJ articulated "good reasons" for assigning partial and little weight to Dr. Watson's opinions and little weight to Dr. Selinger's opinion, there was no violation of 20 C.F.R. § 404.1527. *Schillo*, 2022 WL 1020381, at *10.

**Conclusion**

For the foregoing reasons, Commissioner's Motion to Affirm is GRANTED. (ECF No. 18). Plaintiff's Motion to Reverse or Remand is DENIED. (ECF No. 15). The Clerk of the Court is directed to enter Judgment in favor of the Commissioner and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of April 2022.

                 /s/ Kari A. Dooley
                 KARI A. DOOLEY
                 UNITED STATES DISTRICT JUDGE